## Seely *versus* The City of Pittsburgh.

The frontage rule of valuation, whereby the cost of the paving of streets or other municipal improvements is assessed upon the property holders abutting upon the street, in proportion to the number of feet their property fronts thereon, while it may be a just mode of assessing the cost upon compact city lots, where the properties do not materially differ in value, cannot be applied where the street or improvement is made through rural or suburban districts, and the Act of April 2d 1870, in so far as it applies this mode of assessment to such districts is unconstitutional.

October 6th 1876.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.   WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county :* Of October and November Term 1875, No. 300.

This was a scire facias sur municipal claim brought by the city of Pittsburgh against C. B. Seely, in which the following case was stated for the opinion of the court :—

" That under the provisions of an Act of Assembly, entitled ' An Act to provide for the improvement of Penn avenue and other avenues and streets in the city of Pittsburgh,' approved April 2d 1870, and the supplement thereto, approved March 20th 1872 (copies of which are hereto annexed and made part hereof), the owners of the property abutting on Penn avenue, between St. Mary's avenue and the eastern line of said city, on the 10th day of May 1870, elected James Littell, Paul Hugus, John P. Penny, Dr. A. J. Davis and Dr. John J. Marchant as commissioners to control and superintend the grading, curbing and paving of that part of said avenue (the said act having been previously approved by the councils of the city of Pittsburgh).

" That said commissioners, as required by said Act of Assembly, met and organized, determined the kind and description of pavement to be used upon that part of said avenue to be improved, and let the contracts for the grading, paving and curbing of the same, as required by said act.

" That during the progress of the work, for the purpose of providing for the payment of the cost and expense of said improvement, they made requisition upon the mayor of the said city of Pittsburgh, for the issue of bonds of said city from time to time—upon which requisition, bonds were issued as required by said act, and negotiated by said commissioners, amounting in the aggregate to the sum of $356,500, and the proceeds of said bonds were paid into the treasury of said city, and paid out by the treasurer upon the requisition of said commissioners as required by said act.

" That as soon as said grading and paving of said avenue was completed to the satisfaction of said commissioners, they notified the city engineer of that fact, and in accordance with the requirements of said act, they, on the 18th day of September 1873, assessed the

cost of said improvement equally per front foot upon the property fronting or abutting upon said improvement, and that all other requisites and conditions of said act and supplement were fully and strictly complied with.

"That said defendant, C. B. Seely, at the time said improvement was made, owned, and at the present time owns, property abutting upon said avenue, and assessed with a part of the cost of the said improvement thereof, and which is bounded and described as follows, viz. : Beginning on the north side of Penn avenue, at the corner of Beatty street; thence along said avenue 108.48 feet to the corner of H. H. Negley's land, and thence extending back, preserving the same width 120 feet. That a lien was filed as required by said act, against said property of defendant amounting to the sum of $1073.84. That the line of said improvement, in part, runs through what is called the rural or suburban part of the city, and defendant's premises are situated in such rural district.

"If, under the foregoing statement of facts, your honors should determine that said assessment is not in derogation of the defendant's rights under the constitution of this Commonwealth, that then judgment shall be entered for the plaintiff for the sum of $1301.84, to be collected as directed by said act, with costs, but if on the contrary your honors should conclude that said assessment is in conflict with the provisions of said constitution, that then judgment shall be entered for the defendant for costs. Either party to have the right to take out a writ of error to the Supreme Court."

The Act of April 2d 1870, Pamph. L. 796, and its supplements of February 1st 1871 and March 20th 1872, provided, *inter alia*, as follows :—

That the owners of property abutting on Penn avenue, between St. Mary's avenue and the eastern line of the city of Pittsburgh, should elect five citizens, owners of property, to be known as commissioners of Penn avenue improvement, whose duty it was made to control and superintend the grading, curbing and paving of that part of said avenue above mentioned, and who were to determine the kind and description of pavement to be used, and to make and enter into contracts for furnishing materials, grading, curbing and paving of the said avenue. All contracts made by said commissioners were to be paid out of the funds to be provided for said improvement; and for the purpose of providing for the payment of its cost and the expenses incurred therein, the commissioners were authorized from time to time, as the work progressed, to make requisition upon the mayor of the city of Pittsburgh for the issue of bonds of said city, in such sums as they deemed best; and it was made the duty of the mayor to make and execute bonds in the name of the city, to an amount not exceeding the amount of the contract price for said work; said bonds to be known as Penn avenue bonds, and to

be payable twelve years after date ; the commissioners to negotiate said bonds in such manner as they might think best, and for such prices as might be obtained for the same, not less than par.  All moneys received by the city treasurer from the sale of said bonds were to be kept by him in a separate fund, and paid out on requisition of the commissioners when the improvement was completed ; and it was made their duty to ascertain the entire amount of the bonds sold by them, which was to be taken as the cost of said improvement ; and said cost was to be assessed equally per front foot upon the property fronting or abutting upon said improvement. The commissioners were also required to have a plot of said avenue prepared, showing the separate lots of ground and the names of the several owners, and to make a list or schedule of the names of all said owners, and the amounts assessed against each lot or piece of ground, and to file the same in the office of the prothonotary of Allegheny county ; said assessment to be payable at the office of the city treasurer, in ten equal annual instalments, with interest at seven per centum upon the unpaid portion thereof.  If said instalments, or any of them, were not paid at the time they became due, it was made the duty of the treasurer to certify the same to the city attorney for collection ; and the same was to bear interest at seven per cent. from the time it became due and payable ; said assessments, with the interest accruing thereon, to be a lien upon the property abutting upon said avenue, from the commencement of the work, and to remain a lien until fully paid ; to have precedence of all other liens, and not to be. divested by any judicial sale.  If any assessment or instalment thereof remained unpaid for thirty days after the same became due, the city attorney was to file a claim for the same in the District Court of the county of Allegheny, in the same manner as mechanic's liens are filed, and a writ of scire facias and levari facias might issue thereon, as in the case of mechanics' liens, and the same costs be taxed, judgments be entered thereon for the full amount of the assessment remaining unpaid, with leave to take out execution for the instalment and interest then due, and for each subsequent instalment and interest as the same became due.  All moneys received from assessments were to be appropriated, under direction of the finance committee of the councils of the city of Pittsburgh, to the payment of the interest and the redemption of the bonds which were issued for said improvement.  If any interest should become due on said bonds, where there was no fund from which to pay the same, the councils of the city of Pittsburgh were authorized to make a temporary loan for the purpose of paying the same.  This act was not to take effect until the councils of the city of Pittsburgh should have approved thereof.

On the case stated the court entered judgment for the plaintiff.

Defendant took this writ and assigned this judgment of the court for error.

[Seely v. City of Pittsburgh.]

*J. W. Kirker* and *M. A. Woodward*, for plaintiff in error.—
The part of Penn avenue improved under this act was, in the main,
through the rural or suburban part of the city, where the land is
held in large tracts, and where much of it is unimproved, and used
only for agricultural purposes.   It is contended that the assessment
according to the frontage of property abutting on this avenue, to
pay for the improvement thereof, is not a fair and legitimate mode
of taxation, and does not impose the burthens in accordance with
the benefits conferred.   The frontage rule, as a practical adjustment
of proportional benefits, can apply only to cities and large towns,
where the density of population along the streets and the small
size of the lots make it a reasonably certain mode of arriving at a
true result; but to apply the same rule to rural and suburban lands
leads to such irregularity and injustice as to deprive it of all sound-
ness as a rule:   In re Washington Avenue, 19 P. F. Smith 361.
Local assessments can only be constitutional when imposed to pay
for local improvements clearly conferring special benefits on the
properties assessed, and to the extent of these benefits.   They
cannot be imposed when the improvement is either expressed or
appears to be for general benefit:  Hammett *v.* The City of Phila-
delphia, 15 P. F. Smith 155 ; Cooley's Constitutional Limitations
500.

*George Shiras, Jr.* (with whom was *Thomas S. Bigelow*, City
Solicitor), for defendant in error.—The system under which this
improvement was made derived its name from the title of the first
act, and its main points of difference from the street laws in force
were briefly these:  1.  It required a petition from the majority of
property holders along the line of the proposed improvement before
the councils could act.   2.  The improvement, when authorized by
councils, was placed under the exclusive charge of commissioners
elected by the owners of property abutting on the improvement.
3.  Instead of making the whole cost of the improvement payable
immediately, it was divided into ten equal annual instalments,
with interest.   The provisions of this system were eagerly sought
by property owners in the annexed districts on every side of the
city ; so much so, that up to the time of taking the writ of error
in this case, the sum of five millions of dollars had been borrowed
by the city on the different streets and avenues constructed under
the Penn avenue acts.   No property owner along the line of any
streets or avenues improved under this system, has in any manner
formally objected to these improvements while they were in pro-
gress and they were under the direct and exclusive direction of the
persons immediately interested, to wit: the property owners.
    Should this case be reversed, it would practically add over five
millions of dollars to the debt of the city, which would be a sore
burthen to those who were in no way benefited by the legislation

under consideration. The power of apportionment of a local tax for a local improvement within the limits of a municipal corporation by the frontage rule has been frequently before this court, and approved, viz.: Pennock *v.* Hoover, 5 Rawle 291; Northern Liberties *v.* St. John's Church, 1 Harris 104; City *v.* Wistar, 11 Casey 427; Commonwealth *v.* Woods, 8 Wright 113; McGonigle *v.* City, Id. 118; Magee *v.* Commonwealth, 10 Id. 358; Stroud *v.* City, 11 P. F. Smith 255; Schenley *v.* City, 1 Casey 130; City *v.* Tryon, 11 Id. 404; City *v.* Field, 8 P. F. Smith 320; Smith *v.* McCarthy, 6 Id. 359; Lea *v.* City, 2 Weekly Notes 254.

Chief Justice AGNEW delivered the opinion of the court, January 2d 1877.

It is fortunate for the rights of the people when a case occurs causing the courts to pause and to retrace the boundaries of delegated power. Thus the stealthy steps of invasion may be detected and the power denied, ere it be too late and a precedent become fixed beyond judicial control. This is such a case. The attempt is to apply, here, the frontage rule of valuation of compact city lots to a rural population, and make farm property and town lots indiscriminately pay for an expensively paved city highway, under the name of a street, running far out into the country. The assumption is that by the addition of extensive rural districts to a city, the whole surface is brought by the legislative power within the sphere of city taxation for municipal purposes; and cases are cited of local or special taxation for local purposes, as justifying this stretch of power. But seeming analogies must not be allowed to lead our minds astray. Fortunately this subject has been examined in several recent cases, leading to a fuller development of the principles at the foundation of this power. Prominently among them is Hammett *v.* Philadelphia, 15 P. F. Smith 146 and Washington Avenue, 19 Id. 352. In the early cases the mode of determining the benefits, to pay the damages and the cost of construction, was by actual view and assessment: McMasters *v.* Commonwealth, 3 Watts 292; Fenelon's Petition, 7 Barr 173; Extension of Hancock street, 6 Harris 26. These were followed in the later cases of Commonwealth *v.* Woods, 8 Wright 113; McGee *v.* Pittsburgh, 10 Id. 358; Wray *v.* Pittsburgh, Id. 365. Afterwards came the frontage mode of equal valuation per foot front: Schenly *v.* Allegheny, 1 Casey 128; Philadelphia *v.* Tryon, 11 Id. 401; Schenly *v.* Allegheny, 12 Id. 57; McGonigle *v.* Allegheny, 8 Wright 118; Stroud *v.* Philadelphia, 11 P. F. Smith 255. In none of these cases was there a close examination of the per foot front rule, but it seems to have been assumed as a convenient approximation where the property fronting on the street was of a kind and not differing much in value. But in Washington Avenue it is shown that this mode of valuation is but a substitute for actual assessment. It is there said, "So long, therefore as a

[Seely *v.* City of Pittsburgh.]

law faithfully and reasonably provides for a just assessment according to the benefits conferred, and does not impose unfair and unequal burthens it cannot be said to exceed the legislative power of taxation when exercised for proper objects. It is on this ground only that assessments according to the frontage of property on a public street to pay for its opening, grading and paving, can be justified. As a practical result in cities and large towns the per foot front mode of assessment reaches a just and equal apportionment in most cases." Again, "But it is an admitted substitute only because practically it arrives as nearly as human judgment can ordinarily reach, at a reasonable and just apportionment of the benefits on the abutting properties." "But this rule as a practical adjustment of proportional benefits can apply only to cities and large towns where the density of population along the street and the small size of the lots make it a reasonably certain mode of arriving at a true result. To apply it to the country and to farm lands would lead to such irregularity and injustice as to deprive it of all soundness as a rule, or as a substitute for a fair and impartial valuation of benefits in pursuance of law; so that at first blush every one would pronounce it to be palpably. unreasonable and unjust."

It needs no reasoning to prove the soundness of these views. That the benefits a property owner receives from an improvement can be ascertained only by a reasonable mode of assessment is plain. And, that to measure the fronts of all the abutting properties and divide the cost by an equal charge per foot front upon each, is not an assessment of advantages, but simply an arbitrary mode of charging, is equally plain. Therefore, to be just and equally fair to each, it is evident all the owners must stand in like, or in reasonably equal, circumstances; otherwise the charge is an exaction not a fair assessment. The cases of frontage cited, so far as discoverable, were of city lots in close juxtaposition. The frontage rule, when applied to such cases, is not denied. As remarked in Washington Avenue, "Whatever doubt might have been originally entertained of it as a substitute, which it really is, for actual assessment by jurors or assessors under oath, it has been so often sanctioned by decision it would ill become us now to unsettle its foundation by disputing its principle." These remarks will enable us to test the case before us. The law under which the proceeding took place was peculiar, and in some respects extraordinary. It was passed April 2d 1870 (Pamph. L. 796). A marked feature is that it gives power to a majority of the abutting owners on Penn avenue, between St. Mary's avenue and the eastern boundary of the city of Pittsburgh, a distance of about three miles, to elect a commission of five citizens, without any previous ordinance or subsequent control of the city. The only assent of the city required was its approval of the act before its taking effect. Then the commissioners were to determine the kind of pavement, contract for the work, make requisitions on the city for bonds,

[Seely *v.* City of Pittsburgh.]

and sell them to raise money to pay the contractors. When the avenue was completed it was to come under the city control. The commissioners were to ascertain, on completion, the entire amount of bonds sold by them and the interest, and this should be taken to be the cost of the improvement and assessed equally, per foot front upon the abutting properties. They were to give notice, and within twenty days might correct errors. After that their judgment became final, without appeal. Now, though technically it may be said the improvement was made under municipal authority, because of the general approval of the act by the city, yet, in fact, the improvement is made by a majority of the owners, the minority *nolens volens*. It is perhaps not beyond the power of the legislature to authorize the work to be done by such a commission, but it will be seen that practically the voice of the property owner who objects to be thus charged with the expense, is not heard even through his representatives in the city councils. The municipal authority cannot even intervene for his protection. Now, without resting a decision on these marked features of the law, they constitute strong reasons for a rigid examination into the power of the legislature to authorize the frontage rule to be applied to this case. The east end of Penn avenue upon which this improvement is made extends from St. Mary's cemetery, near the United States Arsenal, eastward for about three miles, as shown by the distances upon the plot made part of the stated case; passing in that distance the grounds of several cemeteries and through lands partly farms, partly large rural residences, partly smaller lots, and partly the lots of several hamlets and villages, which were taken into the city territory. The avenue is a broad, wood-paved highway, after the manner of a city street, and its cost, as evidenced by the bonds issued, was $356,500, while the cost per foot front, as evidenced by the map and the charge, was within a small fraction of ten dollars; the defendant's lot being $108\frac{48}{100}$ feet front, and his assessment $1073.84. The bonds which, under the 16th section, were made the cost of the improvement, were made up of the contract price and the incidental expenses. The contracts were to be let by the commissioners, without supervision, the law providing for no settlement of their account, and the expenses were such as might be determined by the commissioners to be incidental and subject to no review. The commissioners were, no doubt, reputable men, and so far as their personal supervision went, their duties were performed, no doubt, faithfully. Yet, such a system, which subjects the property holders to jobbing contracts and ingenious expedients, such as men bent upon making all they can out of their jobs, and to patent-right claims for wooden streets, which rot out in seven or eight years, without a power of self-protection or the control of even their representatives in councils, is not to be viewed complacently. How near the actual value of the improvement approximated the estimated bond cost, may be inferred

[Seely v. City of Pittsburgh.]

when it is seen that the whole cost was $350,000, and the per foot cost ten dollars. This blending of town and country, of city lots and farm lands, of the residences of the living and the graves of the dead, constitute a group so motley and discordant, a series so wanting in similitude and uniformity, that the frontage or per foot front rule cannot be applied to it. It is so plainly, palpably, rankly and ruinously unjust, it must be pronounced no proper or lawful mode of special taxation, but an injustice so rank is therefore void as against the right of property as protected by the Bill of Rights. The ground of this has been so distinctly stated in the Washington Avenue case it need not be re-stated here: 19 P. F. Smith 363. A fixed sum to be paid per foot, without regard to the character, kind, value or extent of the property, is an exaction, not a just assessment according to benefits. The extent, back to which the lien runs (120 feet), merely limits the quantity to be taken, but does not change the kind, character or value of the property upon which the fixed charge is fastened.

But it is held that Seely's lot is in a village, and therefore the per foot rule may apply to him. Possibly this might have been the case had the streets of that village alone been improved. But this is not its character. The act assumes to make a wide and costly avenue, extending long distances through rural lands, where it is not needed, and to make the cost of the whole the measure of the cost of each owner. It makes a unit of the entire distance, where the per foot front rule obtains, and where it does not obtain, and then divides this integer into fractions of a foot; imposing on the defendant his proportion of the fractions. Such a mode of charging might be continued for any indefinite distance over the state, and the owner of each lot in every village through which the line passes be made to pay his per foot charge of the entire route. The principle of such a system is wrong, and therefore cannot be applied even to the village lot-owner. If the rural portions of the route be exempt, as clearly they must be, then must all others be also, for the system itself is founded on a general *error*. If this case be examined closely, what is it but a repetition of the Hammett or Broad street case in principle, differing only in form. Penn avenue, like Broad street, is a grand thoroughfare, designed for the use of the people of the city proper, where they may ride out into the country for pleasure or profit. That it is a great useful public improvement, so long as its wooden pavement lasts, no one will deny. But it is this very public character for general use, and not for local benefit through the farms and along the cemeteries, which should protect the owners along the route from special taxation. More literally and directly the case is governed by the case of the Washington avenue, which it resembles more closely in form and fact.

More than once lately we have had occasion to reprehend that

[Seely *v.* City of Pittsburgh.]

legislation which seeks to cast the burdens of the public on the shoulders of individuals, often bringing ruin on men of moderate means. Such legislation is too often the fruit of designing schemers to promote their selfish ends. We may therefore say that while the frontage rule is conceded to be a legal mode of assessments, when properly applied, it is not to be used as an arbitrary mode of casting the public burthens upon the property of individuals.

To prevent any misconception of the facts, we may add before closing that they come up as a stated case, and not in equity form. If there be any facts to raise an estoppel or other defence in equity, the parties ought to have stated them. No motion has been made to quash the case as defective. The case itself states "that the line of said improvement in part was through what is called the rural or suburban part of the city, and the defendant's premises are situated in such rural district. The plan hereto attached is the assessment plan for said improvement, and is made part hereof." The plan referred to includes large tracts of land fronting on the avenue, whose lines and measurements noted prove that they are not city lots. For example St. Mary's cemetery fronts 1000 feet, Philip Winebiddle's property 1261 on one side and 2427 feet on the other. The Pennsylvania Railroad Company's land 1829. Then we find many tracts fronting 300 to 400 feet, 400 to 500, 500 to 600, 600 to 700, 700 to 800, 800 to 900 and 900 to 1000.

The facts of the case therefore distinctly appear, and we ought not of our own motion to quash the case.

The judgment of the court below is therefore reversed, and judgment is now entered for defendant for costs.

PAXSON, J., filed a dissenting opinion.