APPEAL OF THE CITY OF PITTSBURGH.

FROM THE DECREE OF THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY, IN EQUITY.

Argued November 3, 1887—Decided January 9, 1888.

A municipal claim for lien was filed in 1877 for street improvements made under the Penn Avenue act of April 2, 1870, P. L. 796. On a bill filed by the owner in 1887, for a cancellation of the lien and an injunction, on the ground of the unconstitutionality of the foot-front rule of assessment adopted under said act, it appearing that the work charged for was actually done and the lien regularly entered therefor, that the plaintiff's property had been greatly increased in value thereby, and that he had neither contributed nor offered to contribute to the cost of the benefits received, he had no grounds for equitable relief and his bill must be dismissed.

Before GORDON, C. J., PAXSON, STERRETT and WILLIAMS, JJ.; TRUNKEY, GREEN and Clark, JJ., absent.

No. 187 October Term 1887, Sup. Ct.; court below, No. 44 June Term 1887, C. P. No. 1, in equity.

In March, 1887, Mary A. Forse, Charles T. Forse, Valonia Forse and Albert G. Forse, filed a bill in equity against the city of Pittsburgh, averring:

That, at the date of the passage of the act of April 2, 1870, P. L. 796, entitled "An act to improve Penn avenue and other avenues and streets in the city of Pittsburgh," William Forse was the owner of a parcel of land in the 22d ward, a

rural or suburban district of said city, containing 421.91 feet on the north side of Forbes street; that under said act an ordinance was passed for the improvement of Forbes street from Brady to Shady lane, and the commissioners, in pursuance of said act and ordinance, prepared and filed in the prothonotary's office a plot, showing the lots of ground abutting and names of owners, on which plot 421.91 feet on north side was assessed to said William Forse, who died, intestate on November 15, 1872, leaving to survive him a widow, the plaintiff, and others; that on October 12, 1877, while the widow and heirs of William Forse were the owners of said parcel, the city of Pittsburgh entered a claim for a lien against said frontage in the name of said William Forse, for the sum of $7,243.73, which still appeared of record against said property, binding every portion thereof, to the depth of 120 feet, and was by the said act declared to be a lien until fully paid, to have precedence over all other liens, and not to be divested by any judicial sale; that said assessments under said act were made at so much for each foot frontage, without regard to character, quantity or uses of property, or benefits conferred; and that said frontage of 421.91 feet was part of a large tract of land used exclusively for farming purposes, and all the properties abutting on said street near said property were rural and agricultural, and in tracts differing largely in length of frontage on said street, some being farms, some large rural residences, some smaller lots, and some lots in villages which were taken into the city at the time of consolidation; that title was now in the plaintiffs, and that said assessment and claim for lien, formally appearing so to be, constituted a cloud on the plaintiffs' title, to the great damage and injury of the plaintiffs for which they had no adequate remedy at law, although they were advised and believed that said claim for a lien was wholly null and void and could not in any way be enforced by the defendant; praying that said lien, so far as it related to said frontage owned by the plaintiffs be decreed null and void, ordered to be canceled, and the defendant be perpetually enjoined, etc.

The answer averred, inter alia: That it was not true that the property at the time of filing the lien or at any time subsequently, was used exclusively for farming purposes; that it

was located in the neighborhood of private residences, some of them among the most valuable and costly in the city; was not more than two miles from the court house, and on one of the most important and continuously traveled streets; that for several years it had had all the benefits conferred upon any of the property within the city limits—gas, water, police and fire protection, and that within its immediate neighborhood, properties had been divided and subdivided and sold by the foot-front for as much as eighty dollars per foot; that by reason of the said improvements, the property in the locality of that of the plaintiffs, instead of selling by the acre was now being held and sold at foot-front valuation: Further that, owing to doubts and complications arising from the decisions of the Supreme Court and the statutes under which the improvements had been made, the city had procured the passage of two acts, to wit: act of May 28, 1879, P. L. 69, and act of May 24, 1881, P. L. 31, and that under the authority thus conferred and for the purpose of offering all persons owning property along the various avenues opportunity for a fair and equitable adjustment of such claims and liens and that no owner should be asked to pay a higher or greater sum than the amount of the actual benefit to him, the city had passed an ordinance [set forth in full], approved January 13, 1881, notwithstanding which the plaintiffs had not paid or offered to pay said compromise assessment offered, or any part thereof, but sought to throw upon the public, the whole burden of improvements upon said street, the cost of which to the city was $525,100.

The cause having been put at issue, *Mr. James Bredin* was appointed examiner and master, who made the following report:

The questions involved are so important in a money point of view to the city of Pittsburgh, and the argument on behalf of the city has taken such a wide scope, that the master deems it not out of place to state the rules which, in his opinion, govern the case at some length.

It is clear that the legislature has the power to direct an assessment on property benefited by the opening or grading and first paving of a street to the extent of such benefits, and that a statute could have been passed, perhaps could yet be

enacted under the circumstances, by which the property benefited by the improvement of the street in question could have been charged with said benefits, the property of each owner being assessed in the usual mode, with the especial benefits accruing from the improvement to such property. If, however, the properties fronting on the street improved and owned by different persons did, at the time the improvement was made, differ materially in value, in area in proportion to frontage on the street, in location, improvements and surroundings, in the uses to which they may or could be applied, and in their physical and other characteristics, they would necessarily be so differently affected by the improvement, some reaping large benefits therefrom, others but little, while some would be rather injured than benefited thereby, that the mode of assessment adopted, viz., to divide and assess the cost of the improvement, or the aggregate benefits to property, on the properties abutting on the street, in proportion to their frontage on the street, would be palpably and grossly unjust and unequal, discriminating to such an extent against some of said holders of property as to violate those clauses of the bill of rights, which declare that private property shall not be taken for public use without just compensation, and that no one shall be deprived of his property unless by the judgment of his peers or the law of the land.

The burden of proof is on the plaintiff who objects to this mode of assessment, to clearly establish this inequality and injustice, but it is not necessary for him to show that he is a sufferer therefrom. The mode of assessment may be fair enough, liberal, indeed, so far as his particular property is concerned. His property may have been enhanced in value beyond the assessment, but that is not a good answer to his application to strike off the lien. The assessment must stand or fall together as a whole. The principle on which they are made, if false and vicious, must overthrow them as to all except those who are estopped by their own acts from denying the validity of proceedings which they were active in presenting, though it may appear in many instances substantial justice would be done to individuals by enforcing the assessment as made.

If the property assessed with benefits by the foot-front rule

is shown to be rural and suburban, "a blending of town and country, of city lots and farm lands," this of itself establishes such inequalities as to overthrow them. The Supreme Court has declared that "farm land and suburban property cannot be assessed by the foot-front rule;" that said rule "as a practical adjustment of proportional benefits can apply only to cities and large towns where the density of population along the street and the small size of the lots make it a reasonably certain mode of arriving at a true result." This, however, must, the master thinks, be taken in connection with what had been previously announced that the foot-front rule of equal valuation per foot-front is a convenient approximation where the property fronting on the street improved is of a kind and does not differ much in value, and that a law which faithfully and reasonably provides for a just assessment according to the benefits conferred, and does not impose unfair and unequal burdens, cannot be said to exceed legislative power of taxation when exercised for proper objects. If, then, it can be made to appear, in any case, that the property assessed by the foot-front rule for the paving, etc., of a street, though situate in the suburbs of a city, is of a like kind and character and occupied for like purposes, of about the same value and so equally affected by the improvements that the foot-front rule of assessments for the benefits done under the circumstances reach a just and equal apportionment of such benefits, that mode of assessment can be sustained, though the property may be, in the popular sense, both rural and suburban.

These are the principles of law which the master gathers from the cases of Seely v. City of Pittsburgh, 82 Pa. 360; In re Washington Avenue, 69 Pa. 361; Hammett v. City of Philadelphia, 65 Pa. 155; Diamond National Bank's App., 27 Pittsb. L. J. 49; Allentown v. Adams, 7 Cent. R. 195, and they commend themselves as sound and wholesome restrictions of legislative power. Properly understood and applied, they establish no rules which tend to arrest the progress or check the necessary improvements of a great and growing city.

What are generally known as the compromise acts, and the ordinance of the city of Pittsburgh in pursuance thereof,

seem to have no bearing on the question before the master. It is certainly very strange that only the power to compromise and accept less than the assessment, and to refund the excess, when a greater sum than the compromise would give had been already paid, was conferred on the city, and that no provision was made to collect a just proportion of the benefits from those who might refuse to compromise and yet were not estopped by their own acts from denying the validity of the liens against their properties; that the city was given only the olive branch to extend and no sword to induce its acceptance. The compromise acts were for the benefit of those who had already paid, or who were estopped from denying the validity of the assessment. To others the city was placed in the position of a suppliant, having no power, as the law stands, to enforce the collection of a dollar, if the assessments already made are invalid.

The master finds it clearly established by the evidence that the property abutting on the street improved, for which the lien in this case, now asked to be stricken off, was filed, was at the time of said improvement rural and suburban in its character, filling the description given by C. Justice AGNEW in Seely v. City of Pittsburgh, " a blending of town and country, of city lots and farm land;" that in no sense could it be said to be of a like kind and character or used and occupied for the same purposes; but, on the contrary, the properties owned by different persons, fronting on said street, differed materially in value, in area in proportion to the frontage, in location, improvements and surroundings; in the uses to which they were or could be applied in their physical and general characteristics.

The master, therefore, would report, as a conclusion of law, that the assessment on the plaintiffs' property by the foot-front rule for the grading, paving, etc., of Forbes street, and the lien filed therefor, was not authorized by law; that the statute directing such mode of assessment was unconstitutional and void; that the plaintiffs have done nothing to estop them from denying the validity of such assessment. He, therefore, recommends a decree as prayed for by the plaintiffs, canceling and striking off said lien and enjoining the defendant from any legal or other proceedings to enforce the same, and that defendant pay the cost of this proceeding.

Various exceptions filed by the defendant were overruled by the master and on argument the court, STOWE, P. J., dismissed the exceptions and, without filing an opinion, made a decree, canceling said lien and awarding a perpetual injunction.

The defendant thereupon took this appeal, assigning the said decree as error.

*Mr. W. C. Moreland, City Solicitor*, for the appellant:

1. No suggestion of hardship, injustice or wrong is made by the plaintiffs, other than that which arises from their present inconvenience, to wit: their inability to make a perfect title without getting rid of this lien. On the other hand, the direct and immediate benefit to the plaintiffs by the improvements on Forbes street, is unquestionably large. For this benefit, and towards paying the cost thereof, they have never paid or offered to pay a farthing. The testimony is conclusive on the point of benefit. Indeed, the fact that part of this very property was sold at the rate disclosed indicates how complete the change and how valuable the property has become. We do not contend that this is the result wholly of these improvements, but we do contend that, had all other things combined, and these streets not been made, we should have had no such condition as now attaches. And what the city asks, and all it asks, is that for whatever benefit is immediately dependent upon and springs from these improvements, payment shall be made. Is this unreasonable? Is there in it anything harsh or unjust?

2. Undeviatingly this court has held that assessments, according to benefits, are constitutional and will be sustained. No effort has been or is being made to escape the full force of Seely v. Pittsburgh, 82 Pa. 360. But the legislature has clothed councils with authority to apportion the liens; that is to say, virtually to determine the benefits; and by the ordinance passed under the authority of the acts of May 28, 1879, P. L. 69, and May 24, 1881, P. L. 31, the original assessment of plaintiffs' frontage, $17.17 per foot-front, was reduced to $3.25 per foot-front, thus fixing the amount of actual special benefits derived by plaintiffs' property: Diamond N. Bank's Appeal, 27 P. L. J. 49.

*Mr. D. D. Bruce*, (with him *Mr. Henry A. Davis*), for the appellees:

1. The compromise ordinance was not, and never was intended to be, an assessment upon the basis of benefits actually conferred; it was passed merely to enable the city to save what it could out of what, after Seely v. Pittsburgh, 82 Pa. 367, it considered a dead loss.

2. All the facts alleged in the bill were found by the master, and fully supported by the evidence, bringing the case directly within the principle of Seely v. Pittsburgh, 82 Pa. 367; Washington Avenue, 69 Pa. 361; Philadelphia v. Rule, 93 Pa. 15; Philadelphia v. Wetherill, 13 W. N. 10; Scranton v. Coal Co., 105 Pa. 445; Allentown v. Adams, 7 Cent. R. 195.

3. No effort has ever been made to assess the property otherwise than by the foot-front rule. To refuse the prayer of the bill on the so called equitable grounds, would be to leave the plaintiffs' property covered with a perpetual lien which the city could never enforce, an absurdity which neither law nor equity would tolerate.

OPINION, MR. JUSTICE WILLIAMS:

This is an injunction bill, filed by owners of land fronting on Forbes street, in the city of Pittsburgh. The plaintiffs seek to restrain the collection of a municipal lien filed against them for grading, paving and curbing said street, and to secure a decree canceling the lien.

The work was done by the city under an ordinance providing for the improvement of Forbes street, which was passed in consequence of, and in conformity with, the act of April 2, 1870. This act provided for the improvement of Penn avenue and several other avenues and streets in the city of Pittsburgh, including Forbes street. The ground of relief set up in the bill is, that when the ordinance was passed, and the work done for which the lien was filed, the lands of the plaintiffs fronting on Forbes street were rural in their character; and that for this reason the act of 1870, so far as it authorized the collection of the cost of the improvement by the foot-front rule, was unconstitutional under the rule laid down in Seely v. Pittsburgh, 82 Pa. 360. The master found the fact to be, that the lands were rural when the improvements were made, and he held the rule of law contended for by the plaintiff to be applicable, that the foot-front assessment of the cost of the im-

provement upon their lands could not be enforced. Upon these findings he recommended a decree enjoining the city against any attempt to enforce its lien, and directing its cancellation; and the court, without putting any reason for its action on the record, made the decree recommended by the master.

If the proceeding had been upon the lien we can understand how the rule in Seely v. The City of Pittsburgh, supra, could have been properly invoked, and that it would have been an answer to the city which it might not have been able to overcome. The plaintiffs, however, are not defending against an attempt to enforce the lien in a court of law, but they have come into a court of equity asking relief upon equitable principles; and it becomes important to see in what position they stand, and what there is in the case to move the conscience of a chancellor. An examination of the bill and answer, and the testimony taken before the master, show that the work charged for in the statement on which the lien was entered was actually done by the city in front of the plaintiffs' property, and was part of an extensive improvement on Forbes street. It also shows that the property of the plaintiffs has been greatly increased in value in consequence of the work so done. Another fact is equally evident, viz.: that the plaintiffs have strenuously resisted all efforts to collect the cost of this improvement or any part of it, and have neither contributed nor offered to contribute their equitable proportion towards it. They have waited until their lands have become practically urban, and are in demand for building purposes in consequence of the work done by the city, and now they come into a court of equity, and ask the court to enjoin the city against making any further effort to enforce its lien for the work which has brought their lands into market at greatly increased prices, and that the lien be canceled so that they may make a title to purchasers free from all future liability therefor. It is incumbent on one who seeks equity to do equity. The plaintiffs have derived great benefit from the expenditures of the city on Forbes street, for which they have paid nothing. If they have made any effort to do equity, to settle upon any fair and conscionable basis with the city, the evidence fails to disclose it. They stand, so far as the bill or the report of the master informs us, upon their strict legal rights.

It is not denied that the act of 1870 authorized the city of Pittsburgh to improve Forbes street, nor that the ordinance under which the work was done was in conformity with that act. It is not denied that the work was done in good faith and in a proper manner, nor that the lien entered against the land owners was in accordance with both the statute and the ordinance. It is not denied that the plaintiffs have been greatly benefited by the work done, nor that they have refused to pay its cost. They now come to a chancellor and ask that their lands may be relieved of lien, because the remedy which the legislature provided for securing the city for its outlay has been held inapplicable to rural property, and cannot be enforced. Standing on this legal proposition, without the payment or offer to pay for the benefit they have received, they ask the chancellor to lay his hands on the records of a court of law and cancel a lien regularly entered therein. It may be that the rule they invoke will prevent the enforcement of the lien in the court in which it is entered. If so, a court of law will apply the rule; but we must leave them to such relief as a court of law can give, until they can present some equitable ground for our interference. It is neither against law nor good conscience for the city of Pittsburgh to seek compensation for its expenditures in grading, paving and curbing Forbes street. If it adopt an inapt or an improper method, the court in which the proceeding is undertaken will administer the law and the city must bear the consequences of its mistake. The advantages to be derived from the delay, and the possible escape from payment, which may result from the adoption of a mistaken remedy by the city, will come to the landowners. They are entitled to no more, so long as they refuse to contribute towards the expenditures of the city, which have so greatly benefited them. For these reasons,

> The decree of the court below is now reversed and set aside, and it is ordered that the bill be dismissed at the costs of the appellees.