# Johnson and Freeman's Appeal.

1. The councils of Philadelphia, previously to the Act of March 22d 1865, had power to direct the grading, curbing and paving of sidewalks and to file liens against the adjacent lots for the cost.

2. The object of the Act of 1865 was to *compel* the councils upon the application of residents on a street, to pave, &c.

January 9th 1874. Before AGNEW, C. J., MERCUR and GORDON, JJ. SHARSWOOD, J., at Nisi Prius.

Appeal from the Court of Common Pleas of *Philadelphia*. In equity : No. 199, to January Term 1872.

The proceedings in this case commenced to the June Term of 1870 of the court below, by a bill brought by John Harrar and others against the city of Philadelphia, the Commissioners of Highways of the city, and of the Twenty-seventh ward, and Samuel Cunningham, Samuel Johnson and Archibald Freeman, contractors, to restrain them from doing certain paving and grading on Darby avenue, in the Twenty-seventh ward, late a part of the Twenty-fourth ward. The question in the case was as to the power of the city councils to authorize, &c., the work.

By the Act of April 16th 1838, the councils were authorized, at

the expense of the owners of adjacent property, " to regulate, grade, pave, &c., the footways or sidewalks."

The Act of 16th April 1840 authorized " the commissioners and inhabitants of the district of Southwark, and also the commissioners and inhabitants of *any of the other* incorporated districts and townships within the county of Philadelphia, to file in the office of the prothonotary," &c., " all claims and demands due to said commissioners and inhabitants of any of the said incorporated districts and townships, for pitching and paving streets and alleys, for digging down, filling up, and for *curbing, paving,* and repairing any footway within the same," &c.

The Consolidation Act of February 2d 1854 provides that it may be prescribed by ordinance that *paving* of streets, except at the intersections thereof, and of footways, &c., " shall be done at the expense of the owners of the ground in front whereof such work shall be done, and liens may be filed by the city for the same as is now practised and allowed by law."

By Act of March 22d 1865, it was enacted :—

SEC. 1. That when a majority of the property owners, or the owners of a majority of the feet frontage, for a continuous distance of five hundred feet, or more, on any one or both sides of any street, road or lane used as a public highway, in the Twenty-second and Twenty-fourth wards, shall petition councils of said city for a paved footway along the same, they shall state in their petition the kind of pavement wanted by them; and councils shall, when such petition is received, direct the highway department of said city to notify the owners of property on said streets, or such parts thereof as may have been included in the petition, to have such footway paved in front of their respective premises, in the manner indicated in the petition, within thirty days after receiving said notice.

SEC. 2. That should any of the property owners refuse or neglect to make said pavement for thirty days after notice has been given, the highway department shall proceed, without delay, to have it made, and charge the cost thereof to the property in front of which it is made ; and if said cost is not paid within thirty days after a bill for the same has been presented, a claim shall be filed in the proper court for the amount thereof, which claim shall be a lien against the property, and shall be collected in the same manner as other municipal claims are now by law collected. * * *

SEC. 5. That should a majority of the owners of property upon any of the said streets upon which public lamps have been erected refuse to petition councils for a pavement, it will be competent for any two citizens living upon the said street, to petition the councils for the said pavement, setting forth the condition of the sidewalk, sworn to before a magistrate, and the councils shall order the commissioner of highways, as is provided in section first of this

[Johnson and Freeman's Appeal.]

Act, to notify said owners to put down a pavement in conformity with this Act.

On the 19th of April 1870 the councils passed this ordinance:—

*Whereas*, Two citizens of the Twenty-seventh (late a part of the Twenty-fourth) ward, of the city of Philadelphia, living upon Darby avenue or Woodland street, upon which public lamps have been erected, having been duly qualified before a magistrate to the condition of the sidewalks upon said streets, and asking councils for a curbed and paved footpath, as required by the fifth section of an Act of Assembly, of the twenty-second day of March, A. D. 1865. Now

SEC. 1. *The Select and Common Councils of the city of Phila-delphia do ordain.* That the Chief Commissioner of Highways be and he is hereby directed to give to the property holders on Darby avenue or Woodland street thirty days' notice, as is required by said Act of Assembly, to grade, curb and pave the sidewalks upon said street, as follows, viz.: on both sides thereof from the city line to Thirty-ninth street; and that in case they do not cause the same to be done within said thirty days, then he shall cause the same to be done, and a lien to be filed against said property, in accordance with the second section of said act.

The bill set out, that the plaintiffs were owners of lots on Darby avenue having an aggregate frontage of 9000 feet; the avenue being opened to the width of sixty feet, and according to a plan of the city was to be opened to the width of eighty feet from Thirty-ninth street; that the grading and widening of the avenue would require great changes in its condition and surface; that there was but a small portion at the eastern end of the avenue closely built on, and that about three miles, the whole distance from Thirty-ninth street through land, were used for agricultural purposes; that until the widening and grading of the roadway be done, it would be useless to curb and pave the footway, as when the grading were done the curb and paving would have to be taken up, &c. The bill then set out the ordinance of 1870 and the Act of 1865, and that before any proceedings were had to widen and grade the avenue, the commissioner of highways notified the plaintiffs to grade, pave, and curb the footway opposite their respective lots, and on their failure to do so within thirty days it would be done by the city and liens for the cost filed against them; that afterwards they were notified to widen the avenue to eighty feet within three months; that before the widening or any grading had been done, the city contracted with Cunningham, Johnson and Freeman, defendants, to grade, curb and pave the footways on the avenue, intending to file liens for the cost against the complainants' property respectively.

The plaintiffs averred that the city had no authority to have such paving, grading and curbing done at the expense of the

owners of the lots, &c. The prayers were to restrain the city and the other defendants from doing the work, &c.

The defendants demurred to the bill; the demurrer was overruled and answers were put in.

The case was referred to Horatio Gates Jones, Esq., as examiner and master, who reported that the bill should be dismissed.

Upon exceptions, the Court of Common Pleas set aside the report and made a decree restraining the defendants from grading, paving and curbing on that part of Darby avenue mentioned in the bill.

Johnson and Freeman appealed, and assigned the decree for error.

*W. W. Wiltbank*, for appellants.—The city has power to do the work and file liens for it: Act of Incorporation of 1789, section 16; Act of April 16th 1840, Pamph. L. 413; Consolidation Act of February 2d 1854, sections 6, 40, Pamph. L. 25, 43; Phila. and Trenton R. R. Co., 6 Whart. 44; Southwark R. R. Co. *v.* City, 11 Wright 314; Branson *v.* City, 11 Wright 329; Commonwealth *v.* Pass. R. W. Co., 2 P. F. Smith 517; Angell on Highways 383, 384; Commissioners *v.* Keith, 2 Barr 218; City *v.* Greble, 2 Wright 339; City *v.* Burgen, 14 Id. 539; Reily *v.* City, 10 P. F. Smith 467; Borough *v.* Shortz, 11 Id. 399; Act of February 21st 1862, Pamph. L. 44.

*J. B. Townsend*, for appellees.

The opinion of the court was delivered, January 19th 1874, by

GORDON, J.—This is an appeal from the decree of the Court of Common Pleas, enjoining the city of Philadelphia and others, her officers and employees, from grading, curbing and paving, &c., the sidewalks on Darby avenue or Woodland street, in the 27th, formerly part of 24th ward, of said city, and from filing or placing on record any alleged lien or claim for any such grading, curbing or paving of said footwalks, on or against the several properties of the plaintiffs to this bill.

This avenue or street is an old highway known as the Darby road. It has been opened and occupied to the width of sixty feet, but is laid out upon the confirmed plan of the city as of the width of eighty feet. The grades for the same have been adopted and recorded, but we understand, except for the distance from 39th to 41st street, there has been no actual opening or grading of the cartway by the city authorities, but that it is occupied by the Delaware County Plank Road Company, and that all but a small portion of this street proposed to be paved, runs through a rural district principally occupied for agricultural purposes.

What is now proposed for our consideration is the authority of

[Johnson and Freeman's Appeal.]

the city councils to make the ordinance complained of, dated April 19th 1870, and which reads as follows:—

"*Whereas*, Two citizens of the 27th (late a part of the 24th) ward of the city of Philadelphia, living upon Darby avenue or Woodland street, upon which public lamps have been erected, having been duly qualified before a magistrate to the condition of the sidewalks upon said streets, and asking councils for a curbed and paved footpath, as required by the fifth section of an Act of Assembly of the 22d day of March, A. D. 1865.   Now

"Sect. 1. The select and common councils of the city do ordain that the chief commissioner of highways be and is hereby directed to give to the property-holders on Darby avenue or Woodland street thirty days' notice, as is required by the Act of Assembly, to grade, curb and pave the sidewalks upon said street, as follows, viz.: on both sides thereof from the city line to Thirty-ninth street, and in case they do not cause the same to be done within thirty days, then he shall cause the same to be done and a lien to be filed against the property in accordance with the second section of same act."

Now the complainants to the bill, taking it for granted that the councils derived their whole power to grade, pave and curb in the Twenty-seventh ward, from the Act of 1865, complained of this ordinance, forasmuch as, firstly, there was no petition for the paving of such footwalks presented by a majority of the land-owners; secondly, there was no refusal on part of such owners to petition for such paving, &c., and hence the application by the two citizens, referred to in the ordinance, was nugatory and conferred no power under which the councils could act.

Thirdly, that under this Act of 1865, the paving, contemplated under the petition of the landowners, was but of a temporary character, and to last only until the city had graded the cartway, when, by virtue of the fourth section, the power attached to the councils to order a permanent paving of the footwalks.   And it would appear that this was the view entertained of the matter by the Court of Common Pleas.   We cannot see the affair in this light.   The error into which the court below fell appears to us to proceed from the mistaken idea already adverted to, that the power of the city councils to grade, curb and pave the footwalks, or to order the same to be done, originates in the Act of 1865, whereas, in fact, this power is conferred by the Act of February 1854, known as the Consolidation Act.   That act provides: "That it may be prescribed by ordinance that paving of streets, except at the intersections thereof, and of footways," &c., "within the limits of the city, shall be done at the expense of the owners of the ground in front whereof such work shall be done, and liens may be filed by said city for the same as now practised and allowed by law."   This is the nerve through which the consolidated city may and does act in these matters and from which it derives its power.

This, however, is no new power conferred upon the city for the first time, as appears not only from the Act of 1854 in its reference to precedent well-known legal formula, but from previous acts passed as well for the various townships and incorporated districts of the county as for the city itself. Passing over the earlier Act of 2d April 1790, which might in itself be construed to be broad enough to enable the city authorities to pave the footwalks, and to raise the money to pay for the same by taxation, we reach, as far back as the 25th of March 1805, an act conferring the power upon the councils to compel the citizens to pave the footwalks. Again, by the Act of 16th April 1838, these same authorities are empowered, at the expense of the owners of the adjacent property, "to regulate, grade, pave and repave, curb and recurb, &c., the said footways or sidewalks.". It also prescribes the method by which such expenses may be recovered from the property-owners.

So in like manner, the Act of 16th April 1840 provides that the commissioners and inhabitants of Southwark, and of any other of the incorporated districts and townships within the county of Philadelphia, may file liens for *curbing*, *paving* and repairing any footway within the same, and also very carefully provides for the collection and enforcement of such liens.

It is therefore obvious that without the Act of 1865, the power of the city was ample to do what she proposes to do in the case in hand.

In view, therefore, of this very full and complete pre-existing power, it may be asked why was the Act of 1865 passed? We answer, because in the outlying rural districts it might well be feared that the wants and conveniences of the inhabitants thereof in the way of street improvements, might be overlooked or neglected, and hence this act was intended as a spur upon the tardiness of the city authorities. The imperative character of the act warrants this reading of it. When a majority of the property-holders petition for a paved footway, stating what kind of pavement they desire, " councils *shall*, when such petition is received, direct the highway department of said city to notify the owners of property on said streets to have such footway paved in front of their premises," &c. So by the fifth section, if a majority of the property-holders neglect or refuse to move in the matter, any two citizens living upon said street may, by their petition and affidavit, set this power in motion.

Again, the intent of the reservation in the fourth section becomes obvious in this reading of the act. The paving directed by the citizens is not to abridge the power of the city to order a repaving of the footwalks, when the grade of the cartway is finally settled and made under the city surveys. This is a wise reservation, for the primitive paving, produced by the petition of the landowners,

[Johnson and Freeman's Appeal.]

may be of a temporary character, or on grades that may be found not to suit the grades of the cartways, and hence requiring radical alterations. This is our interpretation of this act, and whether we are therein correct or not, we certainly find nothing which abridges or curtails the power of the councils, as conferred by precedent acts, to grade, curb and pave the footwalks in the Twenty-seventh ward. It matters not, therefore, whether they were moved to their proposed action by the petition of two citizens or by their own judgment; in either case, they were acting within the bounds of their own legitimate powers, and ought not to have been disturbed in the exercise thereof.

And now, January 10th 1874, this cause came on for hearing on an appeal from the decree of the Court of Common Pleas for the city and county of Philadelphia, and was argued by counsel, and, on consideration, it is ordered, adjudged and decreed that the said decree of the said Court of Common Pleas be reversed and set aside; and that the plaintiffs' bill be dismissed at their costs.