## Steelton Borough, Appellant, v. Henry Booser.

*Boroughs—Streets—Sidewalks—Grading—Act of April* 3, 1851.

The owner of property abutting upon a new street of a borough, is not bound to pay for the grading of the footway, under the act of April 3, 1851, P. L. 320.

When a borough exercises its discretion and decides to grade a street, the work is necessarily an entirety and the whole of it is to be paid for according to the same rule. It need not all be done at the same time. If it seems wise to cut down or fill up the driveway only, postponing the grading of the sidewalks until the abutting lots come into the market, there can be no objection to this action, but it would certainly be unjust and unequal to grade the public driveway at the public expense, and then compel each abutting owner to grade the public footway at his own expense. By McPHERSON, J.

Argued May 30, 1894. Appeal, No. 33, May T.; 1894, by plaintiff, from judgment of C. P. Dauphin Co., Jan. T., 1893, No. 260, in favor of defendant, on trial by court without a jury. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Sci. fa. sur municipal lien.

The following opinion was filed by McPHERSON, J.:

" This case was tried without a jury under the provisions of the act of 1874. We find the facts to be as follows:

" 1. The plaintiff was incorporated under the general borough act of 1851. The defendant is the owner of certain real estate in said borough abutting upon Second street, between Mohn and Highland streets.

" 2. In the natural state of the ground Second street in front of the defendant's land was crossed by a ravine of considerable depth and steepness, its width being about one hundred feet

and its depth about sixteen feet.    In the year 1888, the borough established a grade for Second street which required the filling of this ravine, and in carrying out this work it built a retaining-wall along the building-line on each side of the street, and filled up almost all the space between the walls to the proper grade.    This work was done by the borough and was paid for out of the general treasury.

• " 3. In the fall of 1890 the borough notified the defendant to lay a pavement in front of his land.    He believed the wall (which was built almost entirely of cinder) to be unable to sustain this added weight, and accordingly tore down nearly all of it and began to rebuild it in a more substantial manner. After he had built about four feet, however, he ran out of mate-terial, and could not obtain any more from the mills, as the bor-ough by arrangement with the mill-owner controlled the supply. Thereupon the borough sold him what cinder was necessary and also took charge of the work by its supervisor and workmen and finished the wall.    The defendant did not agree to this, but neither did he object, so far as appears, and after the wall was finished he did what filling and grading were necessary, and laid his pavement.    The borough sent him a bill of $15.37 for the work done by its supervisor, and after some objection he paid it in December, 1890.

" 4. In about ten days part of this wall fell down, doing some injury to the pavement, and from that time on until Au-gust, 1892, the defendant had considerable trouble with both the wall and the pavement.    The principal cause of this trouble was the water which flowed along Second street, both from Mohn street and from Highland street, to an inlet leading to a sewer which had been laid upon the bottom of the old ravine. This inlet was not large enough to carry off the water which was collected at this point during heavy rains, although it was sufficient at all ordinary times. · The water which was not car-ried off flooded the pavement, soaked down to the wall, and did most, if not all, the injury which appeared from time to time.

" 5. On August 5, 1892, the pavement was in much need of repair and the defendant received a notice to ' relay your pave-ment and gutter on east side of South Second street between Mohn street and Highland street in accordance with the pro-

visions of an ordinance of council passed May 23, 1887, within ten days from the date of this notice.' The notice and the ordinance are made part of this finding.

" 6. No express notice was ever given to the defendant to build a wall, but of course a wall of some kind was a visible necessity, and when the notice of August 5th was served he knew that the borough intended to insist upon a wall of solid limestone masonry instead of the cinder wall then standing. For this reason and also because he denied his legal liability, he did not obey the notice. To the question : ' Why did you not build it ? ' he answered, ' I did not want to build a stone wall there ; it is not my place to build it there.'

" 7. Upon the defendant's failure to build the wall within the time specified in the notice, the borough built it of limestone masonry at a cost of $250.31. After it had been finished, the defendant expressed his willingness to lay the pavement, and thereupon did lay it, doing the necessary grading, filling and whatever else was required.

" 8. The borough finished its work on Sept. 27, 1892, and filed the lien now in controversy on Oct. 26th, claiming to recover the cost of the wall, $250.31, with interest from Sept. 27, 1892, and twenty per cent penalty under clause 6 of section 2 of the borough act for the defendant's failure to obey the notice.

## " CONCLUSIONS OF LAW.

" The position of the borough is, that, under the power to require and direct the grading, curbing, paving and guttering of the side- or footwalks by the owner or owners of the lots of ground respectively fronting thereon, found in clause 5 of section 2 of the borough act of 1851, it has the power to require the repaving of the sidewalk which has fallen out of repair, and therefore that the owner is bound to do at his own cost whatever such repaving demands, even to the building of an expensive wall. Undoubtedly a borough has the power to require repaving : Smith v. Kingston Borough, 120 Pa. 357 ; and it is generally true that whenever the owner is liable to repair he must pay for whatever is reasonably necessary to make such repair complete. But we think the question here is of a different character and ought to be decided by determining who was originally bound to build the wall.

" [It was suggested at the trial that the borough was not bound to grade the street between the building lines ; that its legal duty was done when the driveway was graded between the lines of the curbs, and that the abutting owners might thereafter be compelled to grade at their own expense as well as to pave the space intended for the sidewalks.    To state this proposition is to answer it, as it seems to us.    When a borough exercises its discretion and decides to grade a street, the work is necessarily an entirety and the whole of it is to be paid for according to the same rule.    It need not all be done at the same time.    If it seems wise to cut down or fill up the driveway only, postponing the grading of the sidewalks until the abutting lots come into the market, there can be no objection to this action; but it would certainly be unjust and unequal to grade the public driveway at the public expense, and then compel each abutting owner to grade the public footway at his own expense.] [1]    We refer only to newly graded streets such as the one in question, and [we do not think the ' grading ' referred to by clause 5 above quoted includes such work as that disclosed by this testimony, but rather intends to cover the ordinary leveling which is almost always necessary when a pavement is to be laid.] [2]    Otherwise a borough need never do more than grade the driveway ; for the abutting owners must grade the rest of the street as an incident to their liability to pave the sidewalk.

" The grading of a street may be paid for in different ways. Either the public treasury may bear the cost, or if the statutory authority exists the cost may be assessed upon the land which is benefited by the improvement.    Either method takes the expense of the whole work and divides it ratably among those who are to pay ; but to divide the work into sections and to call upon the abutting owners to pay for what is done in front of their respective properties would hardly ever be fair and might often be grossly unjust.    An owner in front of whose land a cut or a fill was necessary, or blasting needed to be done, or a wall was required to hold up the soil, would thus be compelled to pay considerable sums while his adjoining neighbor might pay comparatively little although benefited just as much.

" The case before us illustrates these views.    When Second street was graded it became necessary to fill up this ravine.

This required a wall, and the wall thus became a part of the improvement and was properly paid· for by the borough. It would have been manifestly unjust to require Mr. Booser to pay the whole cost of the wall, because he was not peculiarly benefited thereby; his neighbors and fellow-townsmen all shared in the advantage of a better grade at this point, and could not justly ask him to build this wall at his own expense any more than they could ask him to fill up the driveway at his private cost. He did afterwards pay for rebuilding much of the wall, believing that he was liable (as he probably was after he had torn it down of his own motion); and no doubt believing so the more easily because the cost of the cinder wall does not seem to have been large. The price of a limestone wall however is more significant, and he has naturally demurred. In our opinion his refusal to build the wall was justifiable. It had been put there by the borough as part of the causeway which had been carried over the ravine; it was necessary to support the street at the grade which the borough had established; it had been properly paid for out of the borough treasury; and for all these reasons the duty of maintaining it rested upon the borough and not upon the defendant. The fact that it supports his pavement does not of itself make him liable to rebuild it; it also supports the street and was originally built for that purpose.

" We do not consider the other objections which were urged to the validity of the borough's action in August and September, 1892, because the point above discussed is decisive of the controversy. [We conclude, therefore, that upon the facts found by the court the borough had no legal right to compel the defendant to rebuild the wall in question and for this reason cannot recover.] [3]

" The prothonotary is directed to enter judgment in favor of the defendant if exceptions are not filed according to law."

Exceptions were taken to the portions of the opinion ·in brackets 1 and 2, which were dismissed in the following opinion :

" In deference to the earnest argument of the borough's counsel we have reconsidered the questions involved in this case; but see no cause to distrust either the reasoning or the conclusion already stated. The facts are somewhat peculiar, but

without laying stress upon this peculiarity we do not regard the defendant's liability as determined by those cases which affirm a borough's power to require an abutting owner to lay and maintain a pavement at his own expense. These cases are of unquestioned authority, but they presuppose a street already opened and sufficiently graded to receive a pavement—in other words, so nearly ready for the pavement that nothing more is needed than ordinary leveling, and thus presenting a surface upon which each owner may pave at a practically equal cost; whereas the true question here goes back to the first stage of the proceeding, and requires us to decide by whose hands and at whose expense this sufficient and substantial grading is to be done.

"If a borough has done its full duty when it has provided a sufficient roadway for vehicles, and if it may then call upon the abutting owners to provide a sufficient sidewalk for pedestrians, it is manifest that much inconvenience and injustice will arise. This has already been described in part, but a few words more may be permitted. To say nothing of what may occur if each owner is willing to comply but goes on in his own time and way, what is to be done if the owners neglect or refuse to make the necessary cut or fill? Obviously the borough itself must then proceed with the work, and afterwards compel repayment from the owners. But how will it distribute the cost? If only one owner is in default there will be no difficulty; but if several owners refuse, it will be impossible in practice to separate the work done before each man's door and to charge him simply with the cost of that particular work. As an inevitable result the cost will be distributed according to frontage or by some other uniform rule, and thus the borough will be driven to adopt in the end the very method it now repudiates. Moreover—to use a striking illustration put by defendant's counsel—wherever a fill like that now in proof becomes necessary the borough will be compelled to build a wall at the curb-line to hold up the roadway, and the lot owner will be compelled to build a second wall ten feet distant at the building-line to hold up the sidewalk. A theory which leads to such unnecessary expense is put upon the defensive, and needs the support of convincing argument before it can hope for acceptance.

" Further, an important justification of the power to require a lot owner to pave the sidewalk at his own expense is to be found in the fact that this requirement falls sooner or later upon every other owner in the borough, and thus the burden borne for the public service is equally borne.   Of course a substantial equality is all that is possible, and nothing more is needed to satisfy the general rule that a public burden must weigh uniformly upon all members of the class which is called upon to bear it, but the rule is violated and equality of burden ceases to exist, if, as in the case before us, one citizen is asked to carry, and to carry permanently, an exceptionally heavy weight for the benefit of the whole community.   The total cost of this grading was originally paid out of the borough treasury and not by the abutting owners, and thus the burden was properly borne by all the taxpayers.   To allow recovery from the defendant now would in effect compel him to repay to the borough, and thus to take out of his own pocket, the whole cost of the work in front of his property, although the cost of the work in front of the other abutting lots has been paid for out of the general fund and no repayment is sought from the other owners.   To require this would subject him to unjust and therefore unlawful discrimination, and on this ground alone a recovery might well be refused.

" One word as to the second exception.   The phrase ' ordinary leveling ' was chosen because its meaning is elastic and seems to be sufficiently extensive.   The subject does not admit of precision, and as so often happens each case must be left for consideration, in the light of its own facts.   Certainly, the same word may have different meanings when applied to different situations ; this is true as to ' leveling,' and if the view herein taken is correct, to ' grade,' also, may mean one thing when the borough's duty toward one of its streets is being considered, and may easily and naturally bear a similar but less extensive meaning when the subject of attention is the lot owner's duty toward the sidewalk.   A definition in a dictionary is not conclusive ; it merely helps in the search for the legislative meaning.   A borough may be called upon to make a cut or a fill of fifty feet in ' grading ' a street; but to impose a similar obligation on a lot owner who is ' grading ' the sidewalk is at once seen to be quite another matter.   When he

'grades' he must do ordinary leveling—a foot or two, perhaps more; no positive rule can be fixed, but he is not bound to make a cut or fill so extensive as that supposed."

*Errors assigned* were (1-3) conclusions of law as above, quoting them; (4, 5) overruling exceptions to findings in brackets 1 and 2, quoting them; (6, 7) entry of judgment.

*M. W. Jacobs, Frank B. Wickersham* with him, for appellant, cited: Act of April 3, 1851, clause 5, § 2, P. L. 320; Dictionaries, "Grade;" Ridge St., 29 Pa. 391; Marshall v. Allegheny, 59 Pa. 455; Green v. Reading, 9 Watts, 382; Greensburg v. Young, 53 Pa. 280; Pittsburg v. Walter, 69 Pa. 365; Allegheny v. Blair, 74 Pa. 225; White v. McKeesport, 101 Pa. 398; Jones v. Bangor, 144 Pa. 638; Hand v. Fellows, 148 Pa. 456; O'Brien v. Phila., 150 Pa. 589; Brown v. Lowell, 8 Metc. 172; Callender v. Marsh, 1 Pick. 418; Smith v. Washington, 20 How. 135; 2 Dil. Mun. Corp. 685, 686, 797, 989–90, and notes; Elliott on Roads, pp. 334-6 and cases cited; Act of May 22, 1883, P. L. 39; State v. Newark, 37 N. J. L. 415; Cooley on Taxation, 2d ed. 588; Smith v. Kingston, 120 Pa. 357; Grier v. Sampson, 27 Pa. 183; Homan v. Stanley, 66 Pa. 464; Brookville v. Arthurs, 152 Pa. 334; Lohr v. Phillipsburg, 156 Pa. 248; Schenley v. Com., 36 Pa. 29; State v. Elizabeth, 30 N. J. L. 146; Williams v. Detroit, 2 Mich. 560; 24 A. & E. Ency. L. 444, and cases cited; Endlich, Interp. Statutes, sec. 4; Pittsburg v. Kalchthaler, 114 Pa. 548; R. R. v. Pittsburg, 104 Pa. 522; Abley v. Dale, 11 C. B. 391; Ry. v. McCloskey, 110 Pa. 436; Dawson v. Pittsburg, 159 Pa. 317; Harrisburg v. McCormick, 129 Pa. 213; Robins v. New Brunswick, 4 N. J. L. 116.

*Edwin W. Jackson,* for appellee, cited: Phila. v. Greble, 38 Pa. 339; Mauch Chunk v. Shortz, 61 Pa. 399; Millerstown v. Bell, 123 Pa. 154; Trickett on Boroughs, §§ 270, 335.

PER CURIAM, July 11, 1894:

Trial by jury having been waived, this case was submitted to the court below under the provisions of the act of April 22, 1874.

The record contains a clear and concise statement of the facts found by the learned trial judge together with the legal conclusions drawn by him therefrom. The questions presented have been so fully considered and so satisfactorily disposed of that further discussion of any of them is unnecessary. The judgment in favor of the defendant is therefore affirmed.

Judgment affirmed on the opinion of the court below.