# Philadelphia *v.* Weaver.

*Municipal liens—Police power—Construction of sidewalks.*

Assessments for the construction of sidewalks are distinctly referable to the power of police, and are not dependent upon the taxing power, hence it is not material to the right of lien whether property is rural or urban.

*Municipal liens—Grading sidewalks.*

There is no legislative authority authorizing municipal authorities to impose upon property owners the burden of grading sidewalks to meet substantial changes in the grade of the cartway, and it has been decided that an assessment against abutting property for the grading of the footway cannot be sustained. Steelton Borough v. Booser, 162 Pa. 630.

*Municipal liens—Grading streets—Rural districts—Remedy in act of 1891.*

In grading streets through rural districts the municipalities have, in the Act of May 16, 1891, P. L. 75, an instrument ready fitted to their hands for the collection of the cost of the work from property benefited, and it is not necessary that they should seek remedies not authorized by law, or recover upon principals of doubtful application to the subject-matter.

Argued Oct. 6, 1898. Appeal, No. 28, Oct. T., 1898, by Vulcanite Paving Company, in suit of City of Philadelphia to use of the Vulcanite Paving Company against Chandler Weaver and John W. Dean, owners, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1894, No. 1054, M. L. D., on verdict for defendants. Before RICE, P. J., REEDER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by W. D. PORTER, J.

Amicable sci. fa. sur municipal lien filed by plaintiff for $300.76, for sidewalk (excavation) grading of Borbeck street in the city of Philadelphia.

It appears from the evidence that by ordinance of select and common councils of the city of Philadelphia, approved June 7, 1893, Borbeck street from Oxford road to a point about 150 feet northwest of " C " street was authorized to be opened.

By ordinance of select and common councils of the city of Philadelphia, approved on February 17, 1894, the director of the department of public works of the city of Philadelphia was authorized and directed to grade Borbeck street from Fillmore street to Oxford road. Said ordinance also provided that the

property owners fronting on said street should grade and curb their sidewalks.

On May 23, 1894, the city of Philadelphia entered into a contract with the Vulcanite Paving Company, the appellant, to grade the street as established by law, including the footway. The appellant agreed to excavate and grade the sidewalk for twenty-five cents per cubic yard, and to accept assessment bills against the property owners fronting on this street in payment thereof. The work was done in the summer of 1894, and a lien filed against the appellee, Chandler Weaver, for $300.76. Subsequently the lien was amended by changing the description of the property. On June 17, 1897, the name of John W. Dean was suggested of record as one of the present real and registered owners. An amicable scire facias was filed on June 17, 1897. The case was tried before a jury on October 25, 1897.

Verdict and judgment for defendants. Plaintiff appealed.

*Error assigned* was in charging the jury as follows: " It seems very evident that this is farm land, and that this is a farming neighborhood, and that the evidence is conclusive that it is rural or farm land and that the property is not subject to a lien for such improvements."

*Henry F. Walton*, with him *John K. Andre*, for appellant.— The question whether defendant's property was farm land should have been submitted to the jury under proper instructions. The burden of proof that the land was rural and not ripe for city improvements was on the defendant.

There is a complete system in the city of Philadelphia for the enforcement of municipal claims for excavating and paving sidewalks as fully appears by a reference to the various acts of assembly relating to this subject : Act of March 24, 1805, 4 Sm. L. 232; Act of April 16, 1838, P. L. 626 ; Act of April 16, 1840, P. L. 410, sec. 9.

All the powers which were delegated to the city councils concerning the grading and paving of sidewalks in these various acts of assembly were contained in the consolidation Act of February 2, 1854, P. L. 21. sec. 1, Ordinance of February 11, 1889 Ord. 12, and Ordinance of July 3, 1893, Ord. 334.

The right of the city of Philadelphia to charge the cost of grading and excavating sidewalks under these acts of assembly is indisputable. This contention is supported in the case of Borough of Chester v. Garland, 162 Pa. 91.

In Johnson & Freeman's Appeal, 75 Pa. 96, it was expressly stated that the city of Philadelphia had power to direct the grading, curbing and paving of sidewalks and file liens for the cost against the abutting lots: Phila. v. Penna. Hospital, 143 Pa. 367.

If construction of sidewalks is a police regulation which renders the property owner liable for the cost of the improvement, it is fair to conclude that the digging out and filling in and levelling off of the sidewalk, which is necessary for the safety of pedestrians, may be authorized as a police regulation. This being so the landowner must pay for the improvement whether any special benefits accrue to him or not.

The act of 1840 clothes the municipality of Philadelphia with police power to grade sidewalks in the townships and incorporated districts and to charge the cost of the work against the property owners.

According to this view of the case at bar, the appellee is liable to pay for the grading of the footway in front of his property on Borbeck street, even if the land through which the street passes is of a rural character. The street having been once cut through, the power of the city is absolute in determining what pathway along the road is necessary for the safety of pedestrians.

*Jos. W. Hunsicker,* for appellees.—Laws assessing the cost of municipal improvements in proportion to the frontage on the street applies only to urban property and not to rural property. As to the latter, they are unconstitutional: Washington Avenue, 69 Pa. 353 ; Seeley v. City of Pittsburg, 82 Pa. 360 ; McKeesport v. Soles, 165 Pa. 628.

The owner of property abutting upon a new street of a borough is not bound to pay for the grading of the footway under the Act of April 3, 1851, P. L. 320. It would certainly be unjust and unequal to grade the public driveway at the public expense and then compel each abutting owner to grade the public footway at his own expense: Steelton Boro. v. Booser, 162 Pa. 630.

OPINION BY W. D. PORTER, J., July 26, 1900:

Borbeck street was duly opened as a public highway, on the natural grade of the surface, through the lands of defendants, in 1893. In February, 1894, an ordinance was duly passed authorizing and directing the proper department of the city government to grade the street to the established grade of the city, and construct the necessary sewers or drains. The ordinance contained this provision, viz.: "The owners of property fronting on said street shall grade, curb and pave their sidewalks." The city on May 1, 1894, before any contract had been let for grading the cartway, served a notice on the defendants to grade the sidewalk. On May 23, 1894, the city entered into a contract with the use plaintiff for the grading of the street from building line to building line, which contract contained this provision: "Payments for grading the roadway of the said street shall be made in city warrants, drawn on the city treasurer by the chief of the bureau of highways . . . . and payments for grading the footway shall be made in assessment bills, prepared in accordance with the provisions of the ordinance, approved July 3, 1893." The ordinance of July 3, 1893, referred to provides: "Whenever councils shall direct the grading of any street or highway, as provided in section 1, it shall be the duty of the director of the department of public works, immediately upon the awarding of such contract, to notify the owners of property on each side of said street, or highway, to grade the footways of full width to the established grade of the city, so that the same shall be unimpeded and safe for public travel, and in case of neglect or refusal of said owner or owners to comply with the said notice the director of the department of public works shall cause the work to be done under the contract aforesaid." The ordinance further provided that upon the completion of the work the director should be authorized to estimate the cost and expenses for the grading of said footways, including the filling of slopes necessary to retain the footways, and assess such cost and expense against the properties in front of which the work had been done in the name of the registered owner or owners thereof. Under the terms of the contract the use plaintiff had a right to use the name of the city in filing liens and collecting the claims. In grading through the lands of the defendants a cut of from three to five feet was

made in reducing the street from the natural to the established grade. The cartway, for which the city was to pay under this contract, was thirty-four feet wide. The sidewalks on each side of the street were of the width of thirteen feet, making the total width of the street sixty feet. This lien was filed against the property of defendants to recover the amount of the cost of the excavation in reducing that part of the street within the sidewalk line, in front of their property, from the natural grade to that established by the city.

At the trial the defendants produced evidence as to the nature and surroundings of the property which would have certainly justified the finding by the jury that the property was rural in character. The learned court below was led to the conclusion that this evidence was so overwhelming and clear that it was for the court, as a matter of law, to pass upon the character of the land, and accordingly withdrew the case from the consideration of the jury and directed a verdict in favor of the defendants. That line of cases which followed Washington Avenue, 69 Pa. 352, and Seeley v. Pittsburg, 82 Pa. 360, has so firmly established that the foot-front rule for the assessment of the costs of municipal improvements, when applied to rural property, is unconstitutional, that discussion is unnecessary. The question whether the property sought to be charged is urban or rural is, however, usually one of fact, to be determined by the jury: McKeesport v. Soles, 165 Pa. 628; 178 Pa. 363; South Chester Borough v. Garland, 162 Pa. 91. These cases affect only the manner of the exercise of the power of taxation. The assessment in this case was not made in accordance with the terms of any statute authorizing taxation; it is not pretended that the benefits were ascertained in accordance with the foot-front rule, or with the rule based upon difference in market value of the property before and after the improvement. The assessment is for cost of the work done immediately in front of defendants' land, and, in the absence of a statute authorizing such assessment and the filing of a lien therefor, it cannot be sustained as an exercise of the taxing power of the municipality: McKeesport v. Fidler, 147 Pa. 532; Fell v. Philadelphia, 81 Pa. 58; Athens Borough v. Carmer, 169 Pa. 426.

The liability which it was sought to impose upon the prop-

erty of the defendants was not an exercise of the taxing powers of the municipality, and, if enforceable, is not subject to the rule that the limit of special benefit is the limit of liability to special assessment. An ordinance requiring lot owners to construct sidewalks and keep the same in repair is a police regulation, and is not based on the right to subject property to local taxation. Such an ordinance, if within the limits of municipal authority, imposes upon the property owner a duty, the neglect of which creates a liability, if founded upon statutory warrant. Assessments for the construction of sidewalks are distinctly referable to the power of police, and, not being dependent upon the taxing power, it was not, in this case, material whether the property was rural or urban: Wilkinsburg Boro. v. Home for Aged Women, 131 Pa. 109; Philadelphia v. The Penna. Hospital, 143 Pa. 367; Pittsburg v. Daly, 5 Pa. Superior Ct. 528; Cooley on Taxation, 398; Borough of Greensburg v. Young, 53 Pa. 280; Johnson and Freeman's Appeal, 75 Pa. 96.

The weakness of plaintiff's case consisted not in the character of the property which it was attempted to charge, but in the lack of authority to assess any property, in the manner here proposed, for the cost of such work as that covered by this assessment. The delegation of the police power, to impose upon property owners duties such as those attempted to be exacted of these defendants, must come from the commonwealth.

Many acts of assembly have been passed which invested the city of Philadelphia with power to regulate its streets and highways, but those which have a bearing upon the question now under consideration, as cited by counsel and discovered by our own researches, are not numerous. The act of March 25, 1805, 4 Sm. L. 232, authorized the city to make ordinances, and among other things provided, that: "Whenever the cartway of any street, court or other passage shall be regulated, shaped and formed, or when so formed and laid with gravel or other hard substance, in either of those cases the owners of the several lots which are bounded upon or adjoining any such street, court or other passage shall be obliged to form or shape or lay with hard substance or gravel the respective footways opposite to their several lots, in such manner, at such time, and under such penalties as shall be directed by the said ordinances." The

meaning of the words "form or shape" in this enactment, as gathered from the whole section of the statute of which it forms a part, is to construct or make, to give form or shape. This manisfestly refers to an existing grade, and there is nothing in the act which would warrant us in holding that, by force thereof, property owners were to be subjected to a charge for grading their sidewalks to the lines of a new street. When the existing cartway was put in good condition property owners were to be required to put their sidewalks into proper form and shape. Whatever meaning is to be given to the words in question, it is clear that the cartway was to be first shaped and formed, and it was only where there was a cartway in that condition that property owners could be compelled to proceed to improve the sidewalks. The ordinance under which the present improvement was undertaken required the property owners to grade the sidewalk before the cartway was "shaped or formed,"—graded. For this no warrant can be found in the act of 1805.

The Act of April 16, 1838, P. L. 626, authorized the councils of the city "to make rules and regulations for the better regulation of porches, porticoes, benches, doorsteps, etc., or other device or thing, projecting over, under, into or otherwise occupying the sidewalks, or other portion of any of the streets, lanes and alleys; in relation to boxes, etc., placed on said footways; . . . . and at the expense of the owner or owners of the property adjoining to regulate grade, pave and repave, curb and recurb, the said footways or sidewalks; . . . . and the same to enforce by suitable penalty or penalties, and the expense of paving and repaving, curbing and recurbing, as aforesaid, shall be recoverable before any alderman of said city, or before any court having jurisdiction, in the same manner as debts of like amount are by law recoverable." If the claim of the appellant can be sustained, it must be by virtue of this enactment. The power thus granted to the municipality to regulate sidewalks is to be restrained only by the constitution and laws of the commonwealth, and common law, which requires the by-laws of a corporation to be reasonable and not a burden without some fair equivalent. It was clearly the intention of this legislation to confer upon the city the power to regulate the sidewalks of existing streets, and the authority which it conferred to regu-

late, grade and pave sidewalks, at the expense of owners, is not to be enlarged beyond the legitimate terms of the grant. The grading here referred to is only such as is incidental to the sidewalk, as distinguished from the general grade of the street. Under the terms of this enactment the city would, undoubtedly, have the power to ordain a reasonable regulation as to the height of the sidewalk above, or its depth below, the grade of the street, or that footways should slope towards the street, or that they should have foundations of a certain character and be constructed in a certain manner. Where the established grade of the street is at the natural surface grade of the cartway, it might, under some circumstances, be held reasonable to require lot owners to make the sidewalks conform to that level, but that it is not now necessary to decide. The act does not warrant the city in imposing upon lot owners the burden of grading the sidewalks in front of their property, in order to meet a change of conditions resulting from the act of the city in cutting down or filling up the cartway. That it was not the intention of the legislature to impose upon property owners the burden of grading sidewalks to meet substantial changes in the grade of the cartway, made by the city, seems manifest. The grading of the sidewalk which the city was authorized to do was the ordinary preparation of the surface to receive the pavement. It is clear that what the legislature here authorized was intended only to meet some trifling expenditure, for, while the work is to be done at the expense of the property owner, we find that when the remedy for the collection thereof was given the legislature left the cost of grading out of consideration, and an action is authorized for "the expenses of paving and repaving, curbing and recurbing," without any mention of grading. The general borough law of 1851, P. L. 320, conferred upon boroughs the power "to require and direct the grading, curbing, paving and guttering of the side or footwalks, by the owner or owners of the lots of ground, respectively, fronting thereon, in accordance with the general regulations prescribed," and, in the succeeding clause, authorized the borough, upon failure of the owner, to do the work and provided a remedy for the collection of the expenses thereof. The powers and rights conferred by this legislation were certainly not less ample than those with which we now have to deal. It

was held by Judge McPHERSON, in an opinion which was adopted by the Supreme Court, that when a borough exercises its discretion and decides to grade a street, the work is necessarily an entirety, and the whole of it is to be paid for according to the same rule. That it would be unjust and unequal to grade the public driveway at the public expense, and then compel each abutting owner to grade the public footway at his own expense, and that an assessment against the abutting property for the grading of the footway could not be sustained: Steelton Borough v. Booser, 162 Pa. 630. This decision would seem to determine the questions now presented in a manner fatal to appellant's claim.

The Act of April 16, 1840, P. L. 410, sec. 9, affords no foundation for any claim against property, or the owners thereof; it simply provides a remedy for the enforcement of claims authorized by other legislation. The Consolidation Act of February 2, 1854, P. L. 21, preserved the powers then vested in the municipality, and brought within the operation thereof the territory which became incorporated with the city. The 40th section of that act imposes upon owners of property the burden of paving the footways, but confers upon the municipality no authority to make an assessment for grading thereof.

It may well be doubted whether an act of assembly which authorized a municipality, when grading a street, to divide the work into three longitudinal sections and grade the cartway out of the common fund, while compelling lot owners on either side to pay for so much of the grading of the street as came within the lines of the sidewalks, could be sustained as a constitutional delegation of police power. The ground upon which the imposition of the cost of the construction of sidewalks upon the owners of property is sustained as a police regulation, is that the owners of adjacent lots have a peculiar interest in those sidewalks. "When this is done, the duty must be looked upon as being enjoined as a regulation of police, made because of the peculiar interest such owners have in their walks, and because their situation gives them peculiar fitness and ability for performing, with promptness and convenience, the duty of putting them in proper state and of afterwards keeping them in a condition suitable for use:" Cooley on Taxation, 398. This burden may fairly be presumed to be

uniformly and justly imposed upon property according to front-age. When it comes to changing a street from its natural grade to one established by the city, or from one established grade to another subsequently adopted, an entirely different question is presented; the general interests of the munici-pality become involved. One property owner cannot be pre-sumed to have a peculiar interest in the grade of any particu-lar part of the street, nor to be peculiarly fitted or able to perform the work with promptness and convenience. If it be conceded that a property owner may, under the guise of a police regulation, be required to pay for a part of the grading done immediately in front of his lot, it is difficult to compre-hend where the limitation is to be fixed which will determine what part he may be called upon to pay. If a property owner may be called upon to pay for grading the sidewalk when the street is cut or filled five feet, the question of the amount of cutting or filling is not material to the application of the prin-ciple, and he could as well be called upon to pay if the change of the grade made by the city in front of his property were fifty feet. It would thus happen that those who were farthest above or below the grade to which the city had brought the street would have imposed upon them an excessive charge for the cost of changing the street from its natural, or former es-tablished grade. In grading streets through rural districts the municipalities of the commonwealth have, in the Act of May 16, 1891, P. L. 75, an instrument ready fitted to their hands for the collection of the cost of the work from property bene-fited, and it is not necessary that they should seek remedies not authorized by law, or recover upon principles of doubtful ap-plication to the subject-matter.

Judgment affirmed.