# Chester City, Appellant, *v.* Lane (No. 1).

*Road law—Grading—Paving and curbing—Sidewalk—Act of April 2, 1867, P. L. 677.*

Under the Act of April 2, 1867, P. L. 677, the city of Chester has no authority to require a landowner to cut down an embankment so as to make the grade of the footwalk in front of his premises conform to a change of conditions resulting from the act of the city in cutting down or filling up the cartway.

In conferring the power upon boroughs to compel each property owner to grade and pave the footway in front of his premises, the legislature contemplated a street so nearly ready for the paving that nothing more is needed than ordinary leveling, and thus presenting a surface upon which each owner may pave at practically equal cost. The property owner cannot be in default until the substantial grading which is required to bring the street to the point where nothing more is needed than ordinary leveling, has been done.

Where a property owner has been notified to grade, curb and pave a sidewalk, and has notified the city that he is ready and willing to do the curbing and paving after the city has cut down an embankment so as to bring the sidewalk to the proper level, and the city has cut down the embankment, and has proceeded to pave and curb the sidewalk, without giving the owner an opportunity to do the work of paving and curbing, the owner will not be liable for the cost incurred by the city either in the grading, curbing or paving.

Argued Nov. 17, 1903. Appeal, No. 25, Oct. T., 1903, by plaintiff, from judgment of C. P. Delaware Co., June T., 1902, No. 29, for defendant on municipal lien in case of City of Chester to use of James Robinson v. Fannie S. Lane. Before RICE, P. J., BEAVER, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Scire facias sur municipal lien.

The lien was substantially as follows :

Filed by the city of Chester to the use of James Robinson v. Fannie S. Lane by virtue of a contract for the doing of grading, curbing and paving, between the said city and James Robinson, dated April 22, 1901, for the sum of $746.36 for the cost of work done and materials furnished, together with a five per cent penalty for grading, curbing, paving, etc., of sidewalks of Ninth street in front of a certain tract of land belonging to the said defendant, in the said city.    Bill of particulars being as follows :

| | |
|---|---:|
| Curbing 378.75 feet, at 68c., . . . . | $257.55 |
| Recurbing 23 feet, at 8c., . . . . | 1.84 |
| Paving 476.3 sq. yds., at 67c., . . . . | 319.12 |
| Grading 619 cu. yds., at 20c., . . . . | 123.80 |
| Surveyor's charges, . . . . . . | 8.50 |
| Penalty, . . . . . . . | 35.55 |
| Total, . . . . . . . | $746.36 |

—with interest at six per cent per annum.

Notice to the owner was given in the publication of the ordinance providing for the work on January 9, 10 and 11, 1901, and ten days' personal notice to the agent of the defendant on June 25, 1901.    The work was completed on December 23, 1901, and written notice of his intention to file a lien was given by the said James Robinson on March 22, 1902, to defendant's agent, she not being in the county of Delaware.

The affidavit of defense averred :

That the item of $123.80 for grading set out in said lien was for cutting down an embankment in front of defendant's property " about the full width of said sidewalk and averaging about five feet in height," which grading was necessary in order to bring the sidewalk to the grade of Ninth street ; that the said grading was done at or about the same time as the curbing and paving of the sidewalk by the said James Robinson, acting under instructions from the said city, and as its contractor, and one of the provisions of the contract between the city of Chester and the said James Robinson was as follows :

"No allowance made for grading beyond ten inches in depth," which means that the defendant need not do more grading than ten inches, and to be done as a necessary part of the work for preparing foundations for the curb and pavement, and there is no act of assembly, law or ordinance authorizing the city of Chester to impose on the defendant the duty to grade down an embankment in a street in order to bring it to grade so a pavement may be laid, or for the city to do such grading and file a lien for the cost. That by ordinance of January 8, 1901, providing for the curbing and paving of the sidewalks of Ninth street, it was directed that notice shall be given to the property owners before the city shall do the work. That she is not liable for the cost of the curbing and paving until after notice from the city so to do and on opportunity given to do the work herself. That she had repeatedly notified the said plaintiff that she would curb and pave the sidewalks upon the city doing the grading. That no notice was given to the defendant to do the curbing and paving after the grading had been done, nor was there any opportunity given to her to do same. Further defense was made that the curb was not bedded with large stone at each end and middle as provided for in the contract between the said city and the said James Robinson, and that a large number of bricks were not whole as the said contract called for, and that the sidewalk was laid below the level of the roadway and the banks along the line of the sidewalk were left in such condition that during the winter of 1901 and 1902 they were almost entirely covered with muddy water, which has caused the sidewalk to settle and become unlevel. That the defendant is not legally bound to pay the surveyor's charges.

The replication was substantially as follows:

The plaintiff admits the grading or cutting down of embankment in front of defendant's property of the "height and character as in said affidavit of defense fully set forth;" that the work was done after notice to the owner, the said defendant. That the said grading was done under and by authority of the following laws and ordinances: Act of April 2, 1867, section 1, P. L. 677; Act of May 23, 1889, article V, section 3, paragraph 11, P. L. 277, and article XV, section 22, and Act of May 16, 1901, P. L. 224, amending said section 22,

362     CHESTER CITY, Appéllant, *v.* LANE '(NO. 1).

Statement of Facts—Opinion of the Court. [24 Pa. Superior Ct.

and various other acts of assembly ; Ordinance approved May 1, 1867; Ordinance approved October 29, 1894; Ordinance approved January 8, 1901, and various other ordinances.

That the cost of grading up ten inches in depth was included in the charges of curbing and paving set out in the bill of particulars in the lien, and the 619 cubic yards of grading amount to $123.80, set out in said bill of particulars, is for grading in excess of ten inches in depth.

A general denial that the curb was not bedded with large stone at each end and middle, and that the sidewalk in front of defendant's property was laid below the level of the roadway, and that if it is true that the banks along the sidewalk were left higher than the level of the pavement, it is the duty of the defendant to protect the pavement against the washings from the bank and not that of the plaintiff. That the defendant is bound to pay the surveyor's charges in accordance with the ordinance of June 1, 1888.

The defendant moved for judgment on the whole record as provided by sec. 19 of the Act of June 4, 1901, P. L. 364.

The court in an opinion by JOHNSON, P. J., entered judgment for defendant on the whole record.

*Error assigned* was the judgment of the court.

*A. A. Cochran,* for appellant.

*J. C. Taylor,* with him *O. B. Dickinson,* for appellee.

OPINION BY RICE, P. J., March 14, 1904 :

The plaintiff filed a municipal claim for the cost of grading, curbing and paving the sidewalk or footway in front of the defendant's lot. The items of the claim were, inter alia, as follows : Curbing 378.75 ft. @ 68 ct., $257.55; recurbing 23 ft. @ 8 ct., $1.84; paving 476.3 sq. yds. @ 67 ct., $319.12; grading 619 cu. yds. @ 20 ct., $123.80; penalty $35.55. It is alleged in the affidavit of defense that the charge for grading was " for grading or cutting down an embankment in front of defendant's property, about the full width of said sidewalk and averaging about five feet in height, which grading was necessary before said curbing and paving could be done, in order

that the said sidewalk would conform to the grade of the road-way; also that the roadway was graded by the city. There is no denial in the replication of either of these allegations; on the contrary, it is expressly admitted therein that "in order to perform the said work of laying said pavement, it is necessary to do, and the said city caused to be done, the grading or cutting down of an embankment in front of defendant's property, of the height and character as in said affidavit of defense fully set forth."

The first question which arises upon the undisputed facts is, whether the city, having graded the roadway at the general expense, had authority to require the defendant to cut down this embankment so as to make the grade of the footwalk conform to the grade of the roadway, and, upon her default, could cause the work to be done and assess the costs against her property. The authority to require her to do this work is supposed to be derived from section 1 of the Act of April 2, 1867, P. L. 677, special to the city of Chester, which provides that the mayor and council shall have power, "To require and direct the grading, curbing, paving and guttering of the side or footways by the owner or owners of the lots of ground respectively fronting thereon in accordance with the general regulations prescribed." We will not stop to discuss the question whether this section was superseded by clause 11, section 3, article 5 of the Third Class City Act of May 23, 1889, P. L. 277, which does not mention grading; for, even if it be conceded that it is still in force, it must also be conceded that the power conferred thereby is not broader than that conferred upon boroughs by the act of 1851; indeed the above quoted clause is identical in language with clause 5, section 2 of the latter act. This clause of the borough act was most elaborately and thoroughly considered in Steelton Borough v. Booser, 162 Pa. 630. In the course of his discussion of the power of the borough to compel a property owner to grade a footway in front of his lot Judge McPHERSON, whose opinion was adopted by the Supreme Court, said: "The grading of a street may be paid for in different ways. Either the public treasury may bear the cost, or if the statutory authority exists, the cost may be assessed upon the land which is benefited by the improvement. Either method takes the expense of the whole

work and divides it ratably among those who are to pay; but to divide the work into sections and to call upon the abutting owners to pay for what is done in front of their respective properties would hardly ever be fair and might often be grossly unjust. An owner in front of whose land a cut or a fill was necessary, or blasting needed to be done, or a wall was required to hold up the soil, would thus be compelled to pay considerable sums while his adjoining neighbor might pay comparatively little although benefited just as much." The remarks of Judge W. D. PORTER, speaking for our court, are equally forcible and pertinent: " When it comes to changing a street from its natural grade to one established by the city, or from one established grade to another subsequently adopted, an entirely different question is presented; the general interests of the municipality become involved. One property owner cannot be presumed to have a peculiar interest in the grade of any particular part of the street, nor to be peculiarly fitted or able to perform the work with promptness and convenience. If it be conceded that a property owner may, under the guise of a police regulation, be required to pay for a part of the grading done immediately in front of his lot, it is difficult to comprehend where the limitation is to be fixed which will determine what part he may be called upon to pay. If a property owner may be called upon to pay for grading the sidewalk when the street is cut or filled five feet, the question of the amount of cutting or filling is not material to the application of the principle, and he could as well be called upon to pay if the change of the grade made by the city in front of his property were fifty feet. It would thus happen that those who were farthest above or below the grade to which the city had brought the street would have imposed upon them an excessive charge for the cost of changing the street from its natural, or former established grade:" Philadelphia v. Weaver, 14 Pa. Superior Ct. 293. " Certainly," said Judge McPHERSON, " the same word may have different meanings when applied to different situations; this is true as to ' leveling,' and if the view herein taken is correct, to 'grade,' also, may mean one thing when the borough's duty toward one of its streets is being considered, and may easily and naturally bear a similar but less extensive meaning when the subject of attention is the lot owner's duty

toward the sidewalk.  A definition in a dictionary is not conclusive ; it merely helps in the search for the legislative meaning."  From these and other considerations very fully elaborated in the foregoing cases the conclusion was reached in the Steelton case, that in conferring the power upon boroughs to compel each property owner to grade and pave the footway in front of his premises the legislature contemplated a street, " so nearly ready for the pavement that nothing more is needed than ordinary leveling, and thus presenting a surface upon which each owner may pave at practically equal cost," and in the Weaver case, the Act of April 16, 1838, P. L. 626, being before the court for consideration, that the grading " here referred to is only such as is incidental to the sidewalk, as distinguished from the general grade of the street," and that " the act does not warrant the city in imposing upon lot owners the burden of grading the sidewalks in front of their property, in order to meet a change of conditions resulting from the act of the city in cutting down or filling up the cartway."

But it is argued that if these decisions rule this case, they only do so as to the excess of the cost of grading beyond the cost of ordinary leveling.  The answer is twofold : First, the charge for paving covers the cost of grading up to the depth of ten inches.  This was not included in the item for grading because the contract between the city and the use plaintiff expressly provided that no allowance should be made for grading under ten inches in depth.  This provision did not mean that the contractor should do the grading to that extent without pay, but that the stipulated compensation for paving was made large enough to cover grading to that extent.  This was the amount of excavating which the parties deemed incidental to the curbing and paving proper, and there is nothing in the case to show that the ordinary leveling, which in the circumstances the defendant could have been required to do, would include more.  If it would include more, the plaintiff ought to have alleged it, or the facts from which it could be inferred, in his replication.  Second, the defendant could not be in default until the substantial grading, which was required to bring the street to the point where nothing more was needed than ordinary leveling, had been done.  Nor was the defendant in default after that point had been reached, as will be seen when we

come to consider the defense to the charge for curbing and paving.

As the affidavit of defense alleges that the embankment averaged five feet in height, it is inferable that there were places where it did not have that height and other places where it exceeded it. But as is well said by the appellee's counsel a property owner is not compelled to select spots here and there and curb and pave them if he be notified to do the work as an entirety. As a general proposition this is true: if there were any special circumstances making this case an exception to the general rule they ought to have been alleged by the plaintiff. Under the authorities above referred to the defense to the item for grading was prima facie valid, and as it was not rebutted by the replication the court was right in holding that as to that item the plaintiff was not entitled to recover.

The second question is as to the liability of the defendant for the items of the claim for curbing and paving, and the right of the plaintiff to file a lien therefor. The facts pertinent to this question, alleged by the defendant and not denied in the replication, are thus stated in the affidavit of defense: "Defendant says that she has repeatedly notified the said plaintiff that she would curb and pave the said sidewalk or footway upon the said city doing the grading, which said grading was a necessity in order to make the said curbing and paving possible. No notice was given to said defendant to do said curbing and paving after the grading had been done, and the said embankment had been cut down, nor was there any opportunity given her to do the same, notwithstanding her readiness and willingness, and the fact that she was about to enter into a contract to have same done, and notwithstanding express notice to the said city of Chester and James Robinson, the contractor, that if they or either of them did said curbing and paving, that she would refuse to pay for same." We had occasion very recently to consider the question of the liability of a property owner for the cost of curbing and paving the footway in front of his premises, where he had not been notified to make the improvement: Pittsburg v. Biggert, 23 Pa. Superior Ct. 540. "Such duty arises under the statute when, and not until, the municipality by a valid ordinance has "required" him to make the improvement, and in order that he may have opportunity

to perform it, has notified him. The right to do the work him-self, if he is able to do it properly, or if not, to make the best bargain he can for the materials and work required, is a valu-able right, of which the municipality cannot arbitrarily deprive him, and then hold him liable for what, according to the esti-mate of a jury based on evidence of the going prices of such work and materials, it would have cost him. In the absence of waiver or ground of estoppel notice seems to be as essential to the imposition of the duty to make the improvement as the enact-ment of the ordinance; and where there is no duty there can be no default, and, therefore, no consequent liability to reim-burse the municipality for the amount it voluntarily expended." In the present case the defendant, although notified to grade, curb and pave, was not given an opportunity to discharge the duty devolving upon her. Under the undisputed facts the prin-ciple applied in the Biggert case and in Philadelphia v. Ed-wards, 78 Pa. 62, Connellsville Boro. v. Gilmore, 15 W. N. C. 343, and Philadelphia v. Dungan, 124 Pa. 52, was applicable here.

It follows that the court was right in entering judgment for the defendant on the whole record, as provided in sec. 19 of the Act of June 4, 1901, P. L. 364.

Judgment affirmed.